IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | ) | No. CV-10-01814-FJM (MHB) |
|---|---|---|
| Respondent, | ) | CR-08-01249-PHX-FJM |
| vs. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Luis Hurtado-Villa, | ) | |
| Petitioner. | ) | |

TO THE HONORABLE FREDERICK J. MARTONE, UNITED STATES DISTRICT JUDGE:

This matter comes before this Court upon consideration of a Motion to Vacate Sentence Pursuant to 28 U.S.C. §2255 (hereinafter, "§2255 motion"), filed on August 24, 2010, by Petitioner Luis Hurtado-Villa. (Doc. 1.)[1] Respondent, the United States of America, filed a Response on December 21, 2010 (Doc. 10), and on March 15, 2011, Petitioner filed a Reply (Doc. 14). On May 23, 2011, this Court ordered the matter set for an evidentiary hearing, finding pursuant to 28 U.S.C. §2255(b), that the "motion and the files and records of the case [did] not conclusively show that petitioner is entitled to no relief." (Doc. 16.) The hearing took place on July 14, 2011, and at its conclusion the Court took the matter under

---

[1] All documents referenced are documents filed in CV-10-01814, unless specifically indicated as filed in the related criminal action, CR-08-01249.

advisement. (Doc. 21.)

## BACKGROUND

On September 26, 2008, in the related criminal matter, CR-08-01249, Petitioner was charged in a criminal complaint with Cultivation of Marijuana, in violation of 21 U.S.C. §841(a)(1), (b)(1)(A)(vii) and (b)(5). (Doc. 10-1, at 2.) Petitioner was arrested on September 25, 2008, subsequently appeared for his initial appearance, and was ultimately ordered detained. (CR-08-10249, Docs. 5, 11.) At his initial appearance, attorney David Ochoa was appointed to represent Petitioner. (CR-08-10249, Doc. 5.) On October 21, 2008, Petitioner was indicted by a federal grand jury on Count One, Conspiracy to Cultivate Marijuana, a Controlled Substance, and Count Two, Cultivation of Marijuana, a Controlled Substance and Aid and Abet. (Doc. 10-2, at 2-3.) On December 4, 2008, Petitioner entered into a plea agreement, in which he pled guilty to Count One of the indictment. (Doc. 10-3, at 2-11.) Petitioner was sentenced on March 26, 2009, and was committed to the custody of the Bureau of Prisons for a term of eighteen months, to be followed by a 5-year term of supervised release. (Doc. 10-4, at 2.) He did not file an appeal of his judgment and sentence.

Following Petitioner's release from the custody of the Bureau of Prisons, he was transferred to immigration custody in Texas. (Doc. 1-1[2], ¶8.) Petitioner was removed to Mexico several days later. (Id.) Subsequent to Petitioner's conviction, the United States Supreme Court decided Padilla v. Kentucky, __ U.S. __, 130 S.Ct. 1473 (2010). It is pursuant to that decision that Petitioner raises his claim that his counsel was ineffective by failing to advise him of the immigration consequences of his plea, and that his guilty plea was therefore involuntary and should be vacated, and his conviction reversed. (Doc. 1, at 5-6.) Respondent claims in its Response that the Court need not reach the merits of Petitioner's claim because (1) Petitioner's §2255 motion is untimely; (2) a released and deported defendant does not meet the custody requirements to qualify for relief under §2255; (3)

---

[2]Clerk's document 1-1 is Petitioner's "Declaration," filed as an appendix to Petitioner's §2255 motion, and admitted without objection as Petitioner's exhibit 101 during the evidentiary hearing held on his motion on July 14, 2011. (Doc. 21.)

1  Petitioner's express appeal waiver in his plea agreement precludes him from relief on an
2  ineffective assistance of counsel claim; and (4) Padilla establishes a new rule of criminal
3  procedure that precludes retroactive application of the ruling to Petitioner's case. (Doc. 10,
4  at 2-3.)

## CUSTODY REQUIREMENT

Respondent claims that a released and deported defendant does not meet the custody requirements to qualify for relief under §2255. The Court does not find this argument meritorious. The Ninth Circuit has held that a petitioner who is under a term of supervised release is foreclosed from seeking *coram nobis* relief, because a federal defendant who is "subject to supervised release...is in 'custody'" and therefore "may seek relief pursuant to 28 U.S.C. §2255." Matus-Leva v. United States, 287 F.3d 758, 761 (9th Cir. 2002) (citing Jones v. Cunningham, 371 U.S. 236, 24243 (1963)). See also, Stertzbach v. Shriro, 2007 WL 1624752 (D.Ariz. 2007). Respondent does not dispute that Petitioner is subject to supervised release but argues that because Petitioner is in Mexico, the only restriction on Petitioner's liberty "is that he is not permitted to return to the United States without legal authorization." (Doc. 10, at 5.) Respondent provides no authority for this distinction, and therefore the Court finds Petitioner "in custody" for purposes of this §2255 motion.

## TIMELINESS OF §2255 MOTION

The 1-year statute of limitations applicable to §2255 motions runs from "the latest of - (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. §2255(f). Petitioner's conviction became final on April 9, 2009 because he did not appeal. The 1-year deadline to file a §2255 motion

therefore expired on April 8, 2010, unless one of the aforementioned events occurred later in time. Petitioner does not contest that his motion was filed outside the 1-year deadline, but claims that the timeliness of his §2255 motion is governed by the newly recognized right in Padilla, and that this right was made retroactively applicable to cases on collateral review. (Doc. 14, at 4-5.) Since Padilla was decided on March 31, 2010, if the decision created a newly recognized right to be applied retroactively, then Petitioner's §2255 motion, filed on March 15, 2011, is timely.

The Supreme Court in Padilla determined that advice of counsel concerning a specific risk of deportation "is not categorically removed from the ambit of the Sixth Amendment right to counsel." Padilla, 130 S.Ct. at 1482. Thus, the failure to advise a defendant about the immigration consequences of a conviction may satisfy the first prong of Strickland v. Washington. Id. When the Supreme Court announces a "new rule," in general, the rule applies to all criminal cases pending on direct review. Schriro v. Summerlin, 542 U.S. 348, 351 (2004). New "substantive rules," "generally, apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the States's power to punish." Id., at 351-52 (citations omitted). "Such rules apply retroactively because they 'necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal' or faces a punishment that the law cannot impose on him." Id., at 352 (citation omitted).

New procedural rules, on the other hand, "do not produce a class of persons convicted of conduct that law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise. Because of this more speculative connection to innocence, [the Supreme Court] give[s] retroactive effect to only a small set of "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the proceedings." Summerlin, 542 U.S. at 352 (citation omitted). Respondent argues that Padilla announced a "new rule" of criminal procedure that should not be applied retroactively to cases on collateral review. A Supreme

Court case announces a new rule "if the result was not dictated by precedent existing at the time the defendant's conviction became final." Teague v. Lane, 489 U.S. 288, 301 (1989).

Prior to Padilla, the Ninth Circuit had held that "it is objectively unreasonable under contemporary standards for attorney competence" for an attorney to misadvise a client of the immigration consequences of a conviction, but not for an attorney to simply offer no advice concerning immigration consequences. United States v. Kwan, 407 F.3d 1005, 1015 (9th Cir. 2005) (as amended) (abrogated on other grounds by Padilla); United States v. Fry, 322 F.3d 1198, 1200 (9th Cir. 2003). The Supreme Court in Padilla held that an attorney's performance falls below the objective standard of reasonableness if she fails to advise her client of the potential impact the client's guilty plea may have on his immigration status. Padilla, 130 S.Ct. at 1486. In reaching that conclusion, the Court applied the principles of Strickland, in particular whether or not the attorney's failure meets the first prong of the Strickland test-that is, whether it "fell below an objective standard of reasonableness." Padilla, 130 S.Ct. at 1482. Although the Court did not address the retroactive application of its decision, the Court did portend such result when it "[gave] serious consideration" to the Respondent's concern that its ruling would open the "floodgates" to new litigation challenging prior guilty pleas. Id., at 1484. The Court mitigated such concern by noting the difficulty those petitioners purportedly pouring through the gates would have meeting the prejudice prong of Strickland. Id., at 1485.

As Padilla was recently decided, only the Third Circuit Court of Appeals has issued a ruling on the applicability of Padilla to cases on collateral review. In that case, the petitioner became aware of the immigration consequences of his conviction after he was transferred to immigration court for removal proceedings some years after his conviction. United States v. Orocio, __ F.3d __, 2011 WL 2557232 *1 (3rd Cir. June 29, 2011). Petitioner then filed a petition for writ of error *coram nobis* challenging his plea conviction, claiming that he received ineffective assistance of counsel because his attorney did not advise him of the immigration consequences of his drug conviction. Id. The District Court denied relief, and the petitioner appealed. Id. During the pendency of his appeal, the Supreme

Court decided Padilla, and the Third Circuit court faced squarely the issue of Padilla's retroactivity to cases on collateral review:

> The question we confront is whether counsel has been constitutionally adequate in advising a criminal defendant whether to accept a plea bargain. The Court held only one year after *Strickland* that "the same two-part standard [of *Strickland*] ... [is] applicable to ineffective-assistance claims arising out of the plea process," and a court must therefore determine "whether counsel's advice [to accept a plea] was within the range of competence demanded of attorneys in criminal cases." In *Padilla*, the Court relied on "recent changes in our immigration law [that] have made removal nearly an automatic result for a broad class of noncitizen offenders." Moreover, the *Padilla* Court noted that it had "never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland*," a distinction "ill-suited" for removal scenarios. The application of *Strickland* to the *Padilla* scenario is not so removed from the broader outlines of precedent as to constitute a "new rule," for the Court had long required effective assistance of counsel on all "important decisions," in plea bargaining that could "affect[] the outcome of the plea process." In that light, *Padilla* is best read as merely recognizing that a plea agreement's immigration consequences constitute the sort of information an alien defendant needs in making "important decisions" affecting "the outcome of the plea process," and thereby come within the ambit of the "more particular duties to consult with the defendant" required of effective counsel. Far from extending the *Strickland* rule into uncharged territory, *Padilla* reaffirmed defense counsel's obligations to the criminal defendant during the plea process, a critical state of the proceedings.

Orocio, 2011 WL 2557232 *4 (Supreme Court citations omitted).

In addressing the government's argument that Padilla broke new ground, the Court noted that, "[a]lthough the *Padilla* Court acknowledged that some courts had previously held" that it is not ineffective assistance of counsel for an attorney to fail to advise a client of the immigration consequences of a plea, "the Court straight-forwardly applied the *Strickland* rule-and the norms of the legal profession that insist upon adequate warning to criminal defendants of immigration consequences-to the facts of Jose Padilla's case." Id. at *5. The Court's "new rule" analysis "[l]ook[ed] to the intersection of *Strickland* and *Teague*, [and] made three observations:"

> (1) "case law **need not exist on all fours** to allow for a finding under *Teague* that the rule at issue was dictated by ... precedent,"; (2) "*Strickland* is a rule of general applicability which asks whether counsel's conduct was objectively reasonable and conformed to professional norms based 'on the facts of the particular case, viewed as of the time of counsel's conduct,'"; and (3) "'it will be the infrequent case that yields a result so novel that it forges a new rule, one not dictated by precedent,'"

Id. (emphasis added) (citations omitted).

The Court found that Padilla "followed from the clearly established principles of the guarantee of effective assistance of counsel," and rejected the government's argument that Justice Alito's observation (in his concurring opinion) that "[u]ntil today, the longstanding and unanimous position of the federal courts was that reasonable defense counsel generally need only advise a client about direct plea consequences" is evidence of an intended new rule. Id. at *6. The Court stressed that "*Strickland* did not freeze into place the objective standards of attorney performance prevailing in 1984, never to change again." Id. The Court noted that "lower court decisions not in harmony with *Padilla* were, with few exceptions decided before 1995 and pre-date the professional norms that, ... [have] long demanded that competent counsel provide advice on the removal consequences of a client's plea." Id. The Third Circuit concluded that "*Padilla* followed directly from *Strickland* and long-established professional norms," and therefore held that "it is an 'old rule' for *Teague* purposes and is retroactively applicable on collateral review." Id., at *7.

Other lower courts have reached the same conclusion: United States v. Hubenig, 2010 WL 2650625 *7 (E.D. Cal. July 1, 2010) ("In fact, the Ninth Circuit has held [that] '[e]ach time that a court delineates what 'reasonably effective assistance' requires of defense attorneys with respect to a particular aspect of client representation, ... it can hardly be thought to have created a new principle of constitutional law.'") (quoting Tanner v. McDaniel, 493 F.3d 1135, 1143-44 (9th Cir. 2007)); United States v. Dass, 2011 WL 2746181 *3 (D. Minn, July 14, 2011) (collecting cases in accord, and noting that "at least one court has characterized this as the 'majority position,'" referring to Marroquin v. United States, 2011 WL 488985 (S.D.Tex. 2011)).[3]

This Court agrees with these decisions. On the most practical level, the Strickland

---

[3] But see, James v. United States, 2011 WL 3100380 *2 (E.D.N.C., July 25, 2011) (noting that the Fourth Circuit "has stated in dicta in an unpublished decision" that the Padilla decision does not apply retroactively to cases on collateral review); Mendoza v. United States, 2011 WL 1226475 (E.D. Va. March 24, 2011); Doan v. United States, 2011 WL 116811 (E.D.Va. Jan 4, 2011).

analysis requires consideration of professional norms, which are not immutable. In Padilla, the Supreme Court referenced numerous professional publications in reaching its conclusion that counsel must advise a client of the risk of deportation. Padilla, 130 S.Ct. at 1482. Also, the change in immigration law that affects the likelihood of removability of aliens necessarily changes the professional advice. Id. at 1480 ("changes to our immigration law have dramatically raised the stakes of a noncitizen's criminal conviction"). The Court also pointed out that the notion that advice concerning immigration consequences can fall below professional norms and meet the first prong of the Strickland test is not new. See Kwan, 407 F.3d at 1017. Although Kwan and other similar lower court decisions were limited to applying Strickland to affirmative misadvice regarding immigration consequences, the Supreme Court found "no relevant difference between an act of commission and an act of omission in [the] context" of Padilla's case. Padilla, 130 S.Ct. at 1484 (internal quotations omitted).

For all of the above reasons, the Court finds that Padilla did not create a "new rule," either procedural or substantive. Although Petitioner has raised Padilla on collateral review, even if Padilla may be retroactively applied, his motion is nonetheless untimely (filed over 1-year from the date on which his conviction became final) unless he can show that the limitations period began when Padilla was decided. Pursuant to §2255(f)(3), the 1-year limitation period, although expired under §2255(f)(1), is reset on "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." It stands to reason that a finding that the right asserted does not announce a "new rule" under Teague would preclude application of §2255(f)(3). Petitioner argues however, that Padilla, "while not necessarily creating a new rule of law," "did away with the direct versus collateral [consequences] distinction." (Doc. 1, at 17.) He claims that this distinction entitles him to the benefit of the limitations period provided by §2255(f)(3). (Id.) The Supreme Court in Padilla did not for the first time terminate this distinction: on the contrary, the Court specifically noted that it had "never applied a distinction between direct and

collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under Strickland." Padilla, 130 S.Ct. at 1482.

In any event, by virtue of the insertion of the second clause of §2255(f)(3), the requirement in the conjunctive that the right "be made retroactively applicable to cases on collateral review," would not make sense if the "new right" recognized by the Supreme Court did not constitute a new rule under Teague.[4] Otherwise, if the new right was merely an "old rule of criminal procedure" applied in a new context, or a new substantive rule that alters the range of conduct or class of persons the law punishes, it would apply retroactively without a precedential finding of retroactivity, making the second clause of §2255(f)(3) superfluous. The Supreme Court, in discussing the interplay between two clauses of §2255(f)(3), has declared that: "if this Court decides a case recognizing a new right, a federal prisoner seeking to assert that right will have one year from this Court's decision within which to file his §2255 motion. He may take advantage of the date in the first clause of ¶6(3)[5] only if the conditions in the second clause are met." Dodd v. United States, 545 U.S. 353, 358-59 (2005). Thus, the Supreme Court specifically rejected the reasoning of the dissenting Justice, "that the limitation period in ¶6(3) begins to run when the right asserted is made retroactive." Id., at 360. Although the Supreme Court in Dodd did not specifically address whether or not §2255(f)(3) contemplates the existence of "new rights" that do not necessarily constitute "new rules," the reasoning highlights the interdependence of the "new right" and "retroactive application" clauses of the limitations statute. Because Petitioner's claim was not "newly recognized" by the Supreme Court in Padilla, he can not avail himself of the limitations period provided in §2255(f)(3), and his motion is untimely, unless Petitioner can

---

[4]The cases cited above in support of the proposition that Padilla did not create a new rule and is thus retroactively applied, involved writs of *corum nobis* filed by petitioners, and thus did not involve a statute of limitations, or were §2255 motions filed within 1-year of the date the petitioner's conviction became final. See, Orocio, Hubenig, and Dass, supra.

[5]The eight paragraphs of 28 U.S.C. §2255 have been restyled (a) through (h), effective January 7, 2008.

establish equitable tolling.

The Ninth Circuit has made equitable tolling available only when "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time" and "the extraordinary circumstances were the cause of his untimeliness." Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) (citations omitted); Holland v. Florida, __ U.S. __, __, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010) (holding that 28 U.S.C. §2244(d) is subject to equitable tolling in appropriate cases). Petitioner argues as a basis for equitable tolling that Padilla recognized for the first time the distinction between direct versus collateral consequences, and therefore, in turn, "extended a previously-recognized right to effective assistance counsel in criminal proceedings as related to immigration advisals."[6] (Doc. 1, at 16.) It should first be noted that Padilla was decided on March 31, 2010, eight days before his 1-year limitations period expired. Secondly, Petitioner waited nearly a year after Padilla was decided to file his motion. Finally, Petitioner was aware of the facts in support of his claim prior to the expiration of the 1-year limitations period, when he was "transferred to federal immigration custody in Texas" and "appeared before an Immigration Judge and learned for the first time that not only did [his] conviction make [him] removable from the United States, that [he] would never be allowed to live legally in the United States." (Doc. 1-1, at 4.)

Petitioner has not established that extraordinary circumstances existed beyond his control making it impossible to file his motion on time, and is thus not entitled to equitable tolling, making his §2255 motion untimely.

**PLEA AGREEMENT WAIVER**

Respondent also claims that Petitioner's express appeal waiver in his plea agreement precludes him from relief on an ineffective assistance of counsel claim. The Court does not

---

[6] As noted above, the Supreme Court in Padilla specifically noted that it had "never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under Strickland." Padilla, 130 S.Ct. at 1482.

- 10 -

find this argument meritorious. The Ninth Circuit has also held that, at least with respect to a §2254 proceeding challenging a state conviction, a waiver provision in a plea agreement "is unenforceable with respect to an IAC claim that challenges the voluntariness of that waiver." Washington v. Lampert, 422 F.3d 864, 871 (9th Cir. 2005). Although not specifically applying this principle to §2255 proceedings, the Ninth Circuit has acknowledge that "[t]hose of our sister circuits considering this issue have uniformly held that a waiver of §2255 rights cannot be enforced against a petitioner challenging the waiver's validity on ineffective assistance of counsel grounds." United States v. Jeronimo, 398 F.3d 1149, 1156 n.4. See also, United States of America v. Rahman, 642 F.3d 1257, 1260 (9th Cir. 2011) (refusing to remand the case for fact-finding relating to an ineffective assistance of counsel claim relating to the voluntariness of an appeal waiver, but "leav[ing] open the possibility" of such a claim being raised in a collateral proceeding).

**CONCLUSION**

For the foregoing reasons, the Court finds that Movant's claims are barred as untimely. Accordingly, the Court will recommend that Movant's §2255 Motion to Vacate be denied. **IT IS THEREFORE RECOMMENDED** that Movant's *pro se* "Motion Under 28 USC § 2255 to Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody" (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability on appeal be **GRANTED** because the issues are "debatable among jurists of reason," or the questions are "adequate to deserve encouragement to proceed further." Mendez v. Knowles, 556 F.3d 757, 770-71 (9th Cir. 2009) (quoting Barefoot v. Estelle, 463 U.S. 880 (1983), superceded on other grounds by 28 U.S.C. §2253(c)(2))

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1);

1  Fed.R.Civ.P. 6(a), 6(b) and 72.  Thereafter, the parties have fourteen days within which to
2  file a response to the objections.  Failure to timely file objections to the Magistrate Judge's
3  Report and Recommendation may result in the acceptance of the Report and
4  Recommendation by the district court without further review.  See United States v. Reyna-
5  Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure to timely file objections to any factual
6  determinations of the Magistrate Judge will be considered a waiver of a party's right to
7  appellate review of the findings of fact in an order of judgment entered pursuant to the
8  Magistrate Judge's recommendation.  See Fed.R.Civ.P. 72.

DATED this 12th day of August, 2011.

_Michelle H. Burns_
Michelle H. Burns
United States Magistrate Judge